## BOWN v. OWENS.

### No. 2023. Decided January 10, 1910 (106 Pac. 708).

1. TAXATION—WRONGFUL ENFORCEMENT—INSTRUCTIONS. In an action against a county treasurer for conversion of sheep sold for taxes, where plaintiff contended that the assessor of Garfield County had no authority to assess the sheep, because plaintiff was a resident of Wayne County, and had ranged his sheep part of the time during the year in Wayne County and part of the time in Garfield County, so that the sheep were taxable only in Wayne County under Laws 1901, c. 105, sec. 6, providing that the taxes for live stock owned by residents of the state, and driven from one county to another for grazing, and which graze for any portion of the year in the county where owned, shall be paid in that county, thus making the result of the case depend upon the question whether plaintiff was a resident of Wayne County, whether he had a number of sheep in Garfield County which did not range in Wayne County part of the time that had been assessed in Garfield County for taxation, and whether the sheep ranging in Garfield County were there subject to taxation, a charge to find for plaintiff if he was a resident of Wayne County, and if the sheep assessed in Garfield County were grazed any portion of the year in Wayne County, but to find for defendant if plaintiff was not a resident of Wayne County, or if the sheep assessed in Garfield County grazed the entire year there, and no part of the year in Wayne County, was proper, though it did not state the things required by statute to make a lawful assessment, levy, and collection of the tax, and that it was essential for the jury to find that the law in such particulars had been complied with before defendant could recover. (Page 185.)

2. APPEAL AND ERROR—QUESTIONS PRESENTED IN TRIAL COURT—CHANGE OF OBJECTION ON APPEAL—DIRECTION OF VERDICT. A party cannot impute error to the court in refusing to direct a verdict on a motion in which the grounds were not specified, nor upon grounds not specified, in the lower court, unless the defect was incurable, and the party against whom the motion was directed was in no event entitled to recover; and hence, in an action for conversion for selling sheep for taxes, where the ground for motion for a directed verdict in the lower court was that defendant's evidence failed to show legal justification for the seizure and sale of the property, and was insufficient to make up any legal justification for his act, as pleaded, error in refusing a directed verdict thereon could not be assigned on the ground that the evidence was insufficient to show that the delinquent tax list was published according to law.[1] (Page 186.)

[1] Smalley v. Railroad, 34 Utah, 423, 98 Pac. 311.

37 Utah—12

3. TAXATION—WRONGFUL ENFORCEMENT—CONVERSION—ACTS CONSTI-
TUTING—TAKING POSSESSION OF PROPERTY. Where sheep, alleged
to have been unlawfully seized and sold for taxes, were not taken
from the owner's possession, and he was not deprived of their use,
his agent having bid in the sheep at the sale for the amount of ·the
unpaid taxes, making payment with the owner's personal check,
there was no conversion of the sheep; the transaction, at most,
amounting only to a payment under protest.  (Page 187.)

4. APPEAL AND ERROR—HARMLESS ERROR—CORRECT VERDICT. Where a
verdict for defendant was the only verdict which could have been
rendered, erroneous rulings would not be prejudicial.[2]  (Page
187.)

Appeal from District Court, Sixth District; *Hon. John
F. Chidester,* Judge.

Action by William Bown, Jr., against William T. Owens.
Judgment for defendant.  Plaintiff appeals.

AFFIRMED.

*Dilworth Woolley* and *J. W. Cherry* for appellant.

*William F. Knox* for respondent.

STRAUP, C. J.

This is an action for conversion.  It is alleged in the com-
plaint that the defendant, on the 3d day of October, 1906,
"unlawfully and wrongfully seized and disposed" of 181
head of sheep, the property of the plaintiff and converted
them to his own use.  In his answer the defendant denied
all the material allegations of the complaint, except such
as were expressly admitted.  He further alleged that dur-
ing the year 1905 he was the county treasurer of Garfield
County, Utah, and that the plaintiff "during the entire year
of 1905 was the owner of 10,000 head of stock sheep, which
during the entire year of 1905 were in Garfield County;"
that the sheep were regularly assessed for taxation for the
year 1905 by the assessor of that county; that the taxes
were not paid; and that 181 head of the plaintiff's sheep

---

2 Madsen v. Utah Light & R. Co., 36 Utah 528, 105 Pac. 799.

were sold by the defendant for unpaid taxes. The proceedings relating to the assessment of the property, the levy and collection of taxes, the giving of notices, the publication of the delinquent list, and all other matters required by the statute to be done to constitute a proper assessment, levy, and collection of taxes, were all alleged in detail. As a further defense it was alleged by the defendant, among other things, that the 181 head of sheep alleged to have been converted by him "never passed from the possession of the plaintiff, and that said plaintiff is the owner thereof, and that he was in no manner damaged by the sale other than by reason thereof he was required to pay a portion of the taxes due the defendant as treasurer of Garfield County, which had been lawfully assessed and computed" on plaintiff's property in Garfield County; that at the sale an employe of the plaintiff bid in and bought the sheep, and paid for them with the personal check of the plaintiff, and that the sheep so sold were at no time taken from the plaintiff's herd nor from his possession. Plaintiff filed a reply, in which he admitted that he was the owner of 8000 head of sheep during the year 1905. He, however, alleged that he, during that year, was a resident of Wayne County, and that in that year all his sheep grazed a portion of the time in that county, and that none of them grazed exclusively in Garfield County, and that for the year 1905 he was regularly and lawfully assessed by the assessor of Wayne County for 8000 head of sheep, and that he paid and discharged the taxes thereon to the treasurer of that county, that the assessor of Garfield County had no authority or jurisdiction to assess the sheep in Garfield County, and that the defendant as treasurer of Garfield County had no authority or jurisdiction to sell the sheep for unpaid taxes. The case was tried to the court and a jury. A verdict was rendered for the defendant, "no cause of action." Plaintiff appeals. He makes fifty-four assignments of error. It is unnecessary to refer to all of them.

Upon the issues, and at the commencement of the trial, the court ruled that the burden of proceeding rested upon

the defendant. The evidence adduced by him was sufficient to show the following facts: The plaintiff was a resident of Sanpete County, where his wife and unmarried children resided, and where he maintained his home. The plaintiff had from 13,000 to 15,000 head of sheep, some of which were kept and grazed by him in Wayne County, some in Garfield County. About the 10th or 12th of February, 1905, the assessor of Garfield County called on the plaintiff and furnished him a blank "statement of property taxable in Garfield County, Utah, for the year 1905, belonging to, in the possession of, or under the control of" the plaintiff. At that time the assessor stated to the plaintiff that he (plaintiff) had in the neighborhood of 15,000 head of sheep in Garfield County, which were subject to taxation in that county. The plaintiff replied that one of his herds, about 3000 head, was north of the North Henry Mountains, which he thought was not in Garfield County. The assessor insisted that the plaintiff be assessed for 10,000 head of sheep. The plaintiff replied that he would not sign the statement for that number, but that he would sign it for 8000 head. After some controversy between them the assessor finally told plaintiff that he would accept the statement of 8000 head, with the understanding that he (the assessor) would report the matter to the county commissioners of Garfield County for their consideration and action. In this connection the assessor testified that the plaintiff at that time said to him that "he (plaintiff) had 8000 head of sheep in this (Garfield) County, that he run in this county exclusively; that he had that many sheep running in our county, and that he was willing to sign the statement for that number of sheep to be assessed in our county." Thereupon the plaintiff signed the statement so furnished him by the assessor, in which he stated that he had 8000 head of sheep and ten mules "taxable in Garfield County," and that "the above list contains a full and correct statement of all property" owned by him, or under his control, subject to taxation in that county. That statement so signed by the plaintiff was produced, identified, and admitted in evidence.

Thereafter the county commissioners, sitting as a board of equalization, upon due notice to the plaintiff, raised the number of sheep from 8000 to 10,000 head. The total value of the property assessed against the plaintiff in that county—10,000 head of sheep and ten mules—was $20,150.00. The taxes thereon amounted to $704.80. Thereafter, and after the taxes became due, and while the delinquent list of unpaid taxes was being published, the plaintiff met with the county commissioners of Garfield County to consider the amount of taxes that should be paid by him. The plaintiff then claimed and asserted to the board that he had but 13,000 head of sheep; that he had been assessed and taxed in Wayne County for 8000 head; that 5000 head of sheep were all the sheep that he had in Garfield County, and which had "run exclusively in that county, and that he kept 5,000 head in that county all the time," and that he would pay taxes to Garfield County on 5000 head. He further asserted to the board that the 8000 head of sheep which were assessed against him in Wayne County were grazed a portion of the time in Garfield County, and that the latter county would be entitled to its just proportion of the taxes, which would be paid by him to the treasurer of Wayne County on the 8000 head of sheep, and in that way Garfield County would get its proper tax for 10,000 head of sheep which that county had assessed against him.

There is a statute which provides that where transient stock is assessed in one county, but which grazed a part of the fiscal year in another county, such other county is entitled "to such portion of the tax paid on said transient herd as the time in which said transient herd grazed in such county bears to the amount of tax paid." (Section 2542xl, Comp. Laws 1907.) The commissioners called plaintiff's attention to his failure to apply for and file a grazing certificate, as was by law in such case required. (Sections 2539, 2542, Comp. Laws 1907.) The plaintiff thereupon stated that such a certificate would be filed by him showing the number of sheep that were grazed by him in Garfield County, and which were assessed in Wayne County, and again

stated that he would pay Garfield County the taxes on 5000 head of sheep, which he admitted had been in that county all the time during the fiscal year 1905. Thereupon the commissioners of Garfield County remitted one-half· of the tax, and, in accordance with plaintiff's suggestion and promise, required him to pay taxes on only 5000 head of sheep, or the sum of $352.40 The plaintiff filed his grazing certificate, in which it appeared that of the 8000 head of sheep assessed against him in Wayne County, 7300 head had grazed in Garfield County four months of that year. The plaintiff, however, refused and failed to pay any part of the taxes on the 5000 head of sheep which he had admitted were exclusively grazed in Garfield County, and which were within that county during the entire fiscal year. He also failed and refused to pay any portion of the taxes to Wayne County which were assessed against him in that county on the 8,000 head of sheep. The treasurer of Wayne County, however, collected that tax by sale of some of plaintiff's property, and paid to Garfield County the portion of that tax due to it, which amounted to $24.33. The $352.40 taxes due Garfield County on the 5000 head of sheep, remaining unpaid, and the plaintiff having no real estate in that county, the county treasurer of that county, on the 3d day of October, 1906, sold 181 head of plaintiff's sheep in satisfaction of the unpaid taxes of $352.40. Considerable evidence was given in behalf of the defendant, in addition to the plaintiff's admissions, that the plaintiff in the year 1905 was the owner of from 15,000 to 18,000 head of sheep.

The defendant called a witness, and asked him whether Frank Durfee, who bid in the sheep at the sale, was an employe of the plaintiff. Thereupon counsel for plaintiff objected to the question upon the ground that it was immaterial. Without any ruling of the court counsel for the defendant then stated: "I propose to prove by this witness the allegations of our answer in regard to Frank Durfee being in the employ of the plaintiff as a herder, and that Durfee paid for the sheep with the check of the plaintiff, and that the sheep sold were never taken out of the herd,

and that the only damage sustained by the plaintiff was the amount of the check paid to the defendant as alleged in the answer." In reply to that counsel for plaintiff said: "We admit that." The defendant also put in evidence the proceedings had in assessing the property against the plaintiff in Garfield County, and in levying and collecting the taxes, none of which are questioned, except that the delinquent tax list, as now claimed by the appellant, was not published according to law, and that the contents of the notice sent to the plaintiff by the assessor, showing the property and amount of taxes assessed against him, were not shown by the best evidence.

When the defendant rested, the plaintiff moved the court to direct a verdict in his favor on the grounds: "First, that the evidence of the defendant fails to show any legal justification for the seizure and sale of this property as a matter of law; second, and if it is all true, as it has been considered in this motion, it is insufficient and inadequate to make up any legal justification for his acts as pleaded and admitted in the pleadings in this case." The motion was overruled. The plaintiff thereupon gave evidence tending to show, among other things, that he was a resident of Wayne County since the year 1903, and that in the year 1905 he had sheep running in both Wayne and Garfield counties; that he had "no sheep in the year 1905 that grazed exclusively in Garfield County." He admitted signing the statement given to the assessor of Garfield County, in which he stated that he had 8000 head of sheep "taxable in Garfield County," but testified that he gave such statement to the assessor with the understanding that the assessor of Garfield County was to transmit the statement to the asessor of Wayne County (which was denied by the assessor), and that on the back of the statement was indorsed his name and the word "Notam," which is the name of a little village in Wayne County, as his place of residence, and that the word "Notam" was subsequently erased by some person unknown to him. He denied the statements made to the assessor of Garfield County, and to the commissioners of that

county, with respect to the number of sheep exclusively grazed by him in that county during the year 1905, or which were otherwise in that county during all of that year. At the conclusion of all the evidence the plaintiff again requested the court to direct a verdict in his favor. The court declined to do so, and submitted the case to the jury.

Among other things, the court charged the jury that if they found that the plaintiff was a resident of Sanpete County, and that during the year 1905 he had 5000 head of sheep ranging in Garfield County which were assessed in that county while so ranging therein, they should find for the defendant. If, on the other hand, the jury found that the plaintiff was a resident of Wayne County, and that the sheep in question ranged a part of the time in Wayne County, and a part of the time in Garfield County, for the year 1905, then they should find for the plaintiff. And if the jury further found that the plaintiff owned and grazed 5000 head of sheep in Garfield County "the entire year of 1905, and that said sheep were not grazed in that year in Wayne County," then they should find for the defendant. This instruction is assailed, and it is also urged that a verdict ought to have been directed for the plaintiff, on the ground that the evidence conclusively shows that the plaintiff was a resident of Wayne County. The evidence relating to the plaintiff's place of residence during the year 1905 was conflicting. There is, however, ample evidence in the record to justify a finding that the plaintiff was then, and for many years prior thereto had been, a resident of Sanpete County, and not of Wayne County. Complaint is also made of the portion of this charge wherein the court directed the jury to find for the defendant if they found that the plaintiff owned and grazed 5000 head of sheep in Garfield County, for the entire year of 1905, and that none of said sheep grazed any portion of the time in Wayne County for that year, because the court did not, in that connection, also instruct the jury, in respect of the things required by the statute to be done, to make a lawful assessment, and levy and collection of the tax, and that it was essential for them

to find that the law in such particulars had been complied with, before they could properly render a verdict for the defendant. There would be much force to the contention had the plaintiff requested such an instruction, and had the court refused to give it, and had not the plaintiff himself, by his reply, and upon the theory of the case as he presented it by his evidence, and by his requests, himself made the result of the case depend upon the question whether the plaintiff was a resident of Wayne County, whether he had 5,000 head of sheep in Garfield County which did not range in Wayne County part of the time, and whether the sheep ranged by him in Garfield County were there subject to taxation. The principal thing contended for by the plaintiff in the court below was that the assessor of Garfield County had no authority to assess the sheep because the plaintiff was a resident of Wayne County, and that he ranged his sheep during the year 1905 part of the time in Wayne County and part of the time in Garfield County, and for that reason the sheep, under the provisions of section 6, c. 105, Laws Utah, 1901, were subject to taxation only in Wayne County, and could not lawfully be assessed by the assessor of Garfield County. That section provides that the taxes of all live stock owned by residents of the state, and driven from one county to another, for the purpose of being grazed, and which grazed for any portion of the year in the county where owned, should be paid in the county where owned. Because of such provision, and of the claim made by the plaintiff, the court instructed the jury to find for the plaintiff if they found he was a resident of Wayne County, and if the sheep assessed in Garfield County were grazed any portion of the year 1905 in Wayne County, but to find for the defendant if the plaintiff was not a resident of Wayne County, or if the 5,000 head of sheep assessed in Garfield County grazed the entire year of 1905 in that county, and grazed no part of that year in Wayne County. For these reasons we think the complaint made of the charge is not well founded.

Other complaints are made of the charge, not so much that the jury were given wrong principles of law, but principally because the charge was not applicable to the pleadings and to the evidence. We do not think the charge is open to such objections.

It is further urged that the evidence was insufficient to show that the delinquent tax list was published according to law, and for that reason it is now urged, in this court, that the court below erred in refusing to direct a verdict for the plaintiff. It is to be observed that the plaintiff in the court below did not base his motion for a directed verdict on any such ground. The motin was based on the general ground "that the evidence of the defendant fails to show any legal justification for the seizure and sale of this property," and "is insufficient and inadequate to make up any legal justification for his acts as pleaded and admitted in the pleadings." The difficulty with appellant is that in the court below he challenged the sale of the sheep on the ground, and tried his case on the theory, that the sheep were not taxable in Garfield County, but were taxable only in Wayne County. The fair import of the motion, if it can be said that it specifies anything, is in harmony with such theory. It certainly cannot be said that such a motion either advised the court or opposing counsel that a verdict was asked to be directed on the ground of the insufficiency of the evidence to show a proper publication of the tax list, or other regularities of the proceedings in levying and collecting the tax. It is now settled in this jurisdiction that a party cannot impute error to the ruling of the trial court, refusing to direct a verdict on a presented motion, in which the grounds for the direction of the verdict are not specified, nor upon grounds which were not specified in the court below, unless the defect was incurable, and the party against whom the motion was directed was in no event entitled to recover or prevail. (*Smalley v. Railroad*, 34 Utah, 423, 98 Pac. 311.)

Lastly, none of the rulings complained of were prejudicial to the plaintiff because of the admission made in open

court in the progress of the trial. This is not a suit to recover money paid under protest, or paid involuntarily. It is one for an unlawful and wrongful seizure and conversion of sheep, the property of the plaintiff. When the plaintiff admitted that the 181 head of sheep alleged to have been converted by the defendant were not taken out of plaintiff's herd, as was alleged in the defendant's answer, and offered to be proved, but at all times remained in his possession, and that at the sale plaintiff's employe bid in the sheep for the amount of the unpaid taxes, and made such payment with the personal check of the plaintiff, and that the sheep thereafter continued to remain in plaintiff's possession as though no sale had been had, we think he admitted himself out of court on his alleged cause of action for a conversion. It being made to appear that the sheep were not taken from the plaintiff's possession, that he was not in any manner deprived of their use, and that his actual dominion over them was not interfered with, we think his cause of action for a conversion wholly failed. The verdict of the jury being, therefore, the only verdict which properly could have been rendered in the case, the rulings complained of, even though erroneous, did not prejudice the plaintiff. (*Madsen v. Utah Light & R. Co.,* 36 Utah, 528, 105 Pac. 799.) True, it may be said that had not the plaintiff bid in and purchased the sheep at such pretended sale, they would have been sold to another, who, by reason of such sale and purchase, might have taken possession of them, or might have attempted to do so, and in that way plaintiff's possession of, or dominion over, the sheep would have been interfered with. Evidently, to prevent just such a thing, and to prevent the taking of the sheep from him, and his dominion over them from being interferred with, he bought them, or, caused them to be bought for him, at such pretended sale. In other words, the defendant, as treasurer of Garfield County, for unpaid taxes sold to the plaintiff plaintiff's sheep, which at no time were taken from him. And to prevent them from being taken from him, he bought them by paying the treasurer the unpaid taxes. The

 

transaction at most amounted only to a payment under protest, or an involuntary payment, but not to a conversion.

Let the judgment of the court below, be affirmed, with costs. Such is the order.

FRICK and McCARTY, JJ., concur.